RALPH ROGARI (SBN 139422)
ROGARI LAW FIRM, PC
12400 Wilshire Blvd. Suite 400
Los Angeles, CA 90025
(310) 207-0059

MARY LEE (SBN 177085)
LAW OFFICES OF MARY LEE
3250 Wilshire Boulevard 1750
Los Angeles, CA 90010
(213) 383-9083

Attorneys for Plaintiff, Optional Capital, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTIONAL CAPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAS CORPORATION, <br><br> Defendant. | CASE  2:19 CV 01549 SVW (PLA) <br><br> EX-PARTE APPLICATION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RALPH ROGARI <br><br> [28 U.S.C. 1447[c].] |

   Plaintiff Optional Capital Inc. (Optional) respectfully moves this Court for an ordering remanding this case to the Los Angeles Superior Court from which defendant DAS Corporation (DAS) improperly removed it.

   The lawsuit itself was filed in 2011.  Optional seeks tort damages against DAS based solely on California state law claims:  conversion, fraudulent transfer, and violation of California Penal Code § 496.  Since the action is based upon state law, this court lacks subject matter jurisdiction.  28 U.S.C. § 1447[c].

   Yet, after seven years of litigation, and on the eve of trial, with all discovery completed and all trial documents prepared and filed, DAS sought to

delay the trial by filing its removal petition.

The removal then had its intended effect.  DAS got the continuance the trial court had refused to grant.  The FSC was continued from March 5, 2019 to March 18, 2019, and the jury trial was continued from March 11, 2019, to April 15, 2019.   The petition claims that DAS just discovered that Optional is actually bringing federal claims.  The assertion is frivolous.  Federal subject matter jurisdiction did not suddenly appear on the eve of trial of Optional's state law claims.

Since Optional will again lose its jury trial date if required to bring this application on notice, it makes this ex parte application pursuant to Local Rule 7-19.   Optional's counsel advised DAS's attorneys on March 5, 2019 of its intent to file this ex-parte application unless DAS was willing to withdraw the subject removal petition, and DAS's counsel has refused to do so, thus necessitating this application.  (Rogari decl., ¶ 16.)

WHEREFORE, Optional respectfully requests this application be granted and the matter remanded to the Superior Court of California, Los Angeles County, forthwith.

Respectfully submitted,

Date: March 11, 2019                        ROGARI LAW FIRM, PC


*/S/   Ralph Rogari*
By: Ralph Rogari,  Attorney for
Plaintiff, Optional Capital, Inc.

# TABLE OF CONTENTS

**Page**

1.    Background.................................................................. 1

2.    The Court lacks subject matter jurisdiction over Optional's
      state law claims.  DAS has not met its burden to establish
      any of Optional's causes of action are based upon a
      substantial question of federal law............................................. 5

3.    The petition is also untimely......................................... 9

4.    The Act of State Doctrine does not support removal.................. 10

5.    Conclusion.................................................................. 12

Declaration of Ralph Rogari ................................................. 13

Exhibit 1:  First Amended Complaint

Exhibit 2:  U.S. v. DAS Corp., 406 Fed.Appx. 154 (2010)

Exhibit 3:  Optional Capital, Inc. v. Kim, 414 Fed.Appx. 12 (2011.

Exhibit 4:   Findings of Fact and Conclusions of Law

Exhibit 5:   Final Judgment on Claims of Optional Capital

Exhibit 6:   Answer of DAS Corporation

Exhibit 7:  Emails

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page**

Alfred Dunhill of Londong, Inc. v. Republic of Cuba
425 U.S. 682 (1976)                                                    11

Balla v. Idaho State Bd. of Corrections
869 F.2d 461 (9th Cir 1989)                                            7

Caterpillar, Inc. v. Williams
482 U.S. 386 (1987)                                                    6

Eyak Native Village v. Exxon Corp.
25 F.3d 773 (9th Cir. 1994)                                            8

Franchise Tax Bd. of Cal. v. Construction Laborers
Vacation Trust for Southern Cal., 463 U.S. 1 (1983)                   8

Gaus v. Miles
980 F.2d 564 (9th Cir 1992)                                            5

Hanson v. Denckla
357 U.S. 235 (1958)                                                    9

Harris v. Provident Life and Accident Ins. Co.
26 F.3d 930 (9th Cir. 1994)                                           5-6

Hunter v. United Van Lines
746 F.2d 635 (9th Cir. 1984)                                           8

Kamilche Co. v. United States
53 F.3d 1059 (9th Cir. 1995)                                          10

Leeson v. Transamerica Disability Income Plan
671 F.3d 969 (9th Cir. 2012)                                           6

Libhart v. Santa Monica Dairy Co.
92 F.2d 1062 (9th Cir. 1979)                                           5

Maggio v. Zeitz
333 U.S. 56 (1948)                                                     7

Optional Capital, Inc. v. KJ Kim et al.
414 Fed.Appx. 12, 2011 WL 17578                                        2

Owen Equip. v. Erection Co. v. Kroger
437 U.S. 365 (1978)                                                    5

Rivet v. Regions Bank of Louisiana
522 U.S. 480 (1998)                                              7-8, 10, 11

Smith v. Industrial Valley Title Ins. Co.
957 F.2d 90 (3d Cir. 1992)                                             6

Stock W., Inc. v. Confederated Tribes
    873 F.2d 1221 (9th Cir. 1989)                                                    5

Syngenta Crop Protection, Inc. v. Henson
    537 U.S. 38 (2002)                                                               8

Tahoe-Sierra Pres'n Council, Inc. v. Tahoe Reg'l Planning Ag.
    322 F.3d 1064 (9th Cir. 2003)                                                    7

Timberlane Lumber Co. v. Bank of America
    549 F.2d 597 (9th Cir. 1976)                                                     11

Ultramar America Ltd. v. Dwelle
    900 F.2d 1412 (9th Cir. 1990)                                                    7

United Investors Life Ins. Co. v. Waddell U Reed Inc.
    360 F.3d 960 (9th Cir. 2004)                                                     5

U.S. v. DAS Corporation
    406 Fed.Appx. 154, 2010 WL 5189226                                              2

W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp. Int'l
    493 U.S. 400 (1990)                                                              11

**California cases**

Optional Capital, Inc. v. DAS Corp.
    (2014) 222 Cal.App.4th 1388, 166 Cal.Rptr.3d 705                         1, 6, 7

**Constitutions and Statutes**

28 U.S.C. § 1441                                                                    6

28 U.S.C. § 1446 (b) (3)                                                            9

28 U.S.C. § 1447 ( c)                                                               5

Cal. Code of Civil Procedure § 1908 (a)                                            9

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.    Background

This case involves state law claims arising from the now 18 years old theft of $33.7 Million from Optional by Christopher Kim, Erica Kim and Bora Lee ("the Kims").

The lawsuit was filed on December 1, 2011.  It alleged causes of action against DAS for conspiring with the Kims to convert the $33.7 million stolen from Optional, and damages for DAS's participation in a fraudulent transfer. DAS initially obtained a dismissal of the action, but the Court of Appeal, Second Appellate District, reversed, holding Optional had both pled and established a prima facie case that DAS participated in a conspiracy to convert the $33.7 million stolen from Optional, and also pled and established a prima facie case that DAS conspired or aided and abetted Alexandria Investments LLC (Alexandria) to make a fraudulent transfer of $13 million to DAS. Optional Capital, Inc. v. DAS Corp., 222 Cal.App.4th 1388, 1402 (2014).

While the action was pending in the Court of Appeal, Optional prevailed in three related *in rem* asset forfeiture proceedings, with Optional being adjudicated the owner of various properties, including $15 million of the stolen funds that had been transferred to an account in Switzerland (Swiss Funds) held by Alexandria.

The *in rem* proceedings were filed by the U.S. Government in 2004 and 2005.  (USDC consolidated cases nos. 04-2788 ABC, 04-3386 ABC, 05-CV3910 ABC.)  Optional and DAS, as well as Alexandria and the Kims, filed ownership claims to all the properties.  As it does in this action, Optional alleged it owned the Swiss Funds because they were traceable to the funds the Kims had stolen back in 2001.  (Rogari decl., ¶ 4 .)

The Government eventually lost its forfeiture claims.  However, by

decision filed December 15, 2010, the Ninth Circuit held that the district court retained a duty to decide who, as between Optional, DAS, the Kims and Alexandria, was the owner of the defendant properties, and remanded with directions the district court do so.  U.S. v. DAS Corporation, 406 Fed.Appx. 154, 2010 WL 5189226 (2010).  (Exhibit 2.)

Three weeks later, the Ninth Circuit also reinstated a $33.7 million conversion verdict Optional had obtained against the Kims and Alexandria. Optional Capital, Inc. v. KJ Kim et al. 414 Fed.Appx. 12, 2011 WL 17578 (2011).  (Exhibit 3.)

With Optional close to recovering its funds, DAS conspired with the Kims and Alexandria to fraudulently transfer the Swiss Funds out of Optional's reach. Thirteen Million of those funds were transferred to DAS's account in South Korea on February 1, 2011.   Had Optional not sensed something was amiss by DAS's conduct, including its sudden withdrawal of its ownership claims, the fraudulent transfer might have gone undetected for years.

Following hearings in which DAS acknowledged its possession of the $13 Million did not deprive the district court of jurisdiction to determine who owned the funds, the *in rem* consolidated cases came on for trial on April 30, 2013. (Rogari decl., ¶¶ 7, 8.)  The district court conducted a bench trial on the merits of the ownership claims to the Swiss Funds and other defendant properties, and Optional prevailed.  By Findings of Fact and Conclusions of Law entered on May 17, 2013, the District Court made the following findings of fact:

> From July 30, 2001 through November s, 2001, Christopher Kim, Erica Kim, and Bora Lee ("the Kims") converted funds from Optional.
> ***
> The approximate amount that the Kims converted from Optional was 37.1 billion Korean won.

Having heard the evidence presented at trial, the court finds that Optional Capital, Inc., has sufficiently traced the proceeds and product of the 37.1 billion Korean won converted from it during the period of July 30, 2001 through November 5, 2001, to each of the following properties:

\*\*\*

(5)   All funds in Credit Suisse Private Banking Account No. 0251 844548-6 in the name of Alexandria Investment, LLC when the government served its arrest warrant on or about August 8, 2005.

(Exhibit 4:  pg. 3 line 25 - pg. 4 line 1; pg. 4 lines 13-16.)

The District Court also made the following conclusions of law:

Because the Kims were working in concert to convert funds from Optional, and because the conversion scheme involved the Kims' purchases of Optional's stock, the Court finds that it is appropriate to extend a constructive trust in Optional's favor to all of the revenue generated from the Kims' scheme as a whole, and to all of the assets purchased with those revenues.

Thus to the extent the Kims arguably obtained any portion of the above properties with monies derived from the proceeds of the sales from stock purchased from Optional, and not from funds converted from Optional, it is still appropriate to extend a constructive trust over all those properties because all of the Kims' revenue-generating conduct at Optional was part of the same complex scheme to convert Optional's funds.

Based on the foregoing, the Court holds that a constructive trust in Optional's favor extends to all of the above-listed properties.

(Exhibit 4: pg. 7 line 8 through pg. 8 line 22.)

On May 23, 2013, and consistent with its Findings of Fact and

Conclusions of Law, the District Court entered a Final Judgment decreeing

Optional the owner of the defendant properties, including the Swiss Funds:

With respect to the claims of Optional Capital Inc., IT IS HEREBY FOUND, ADJUDICATED and DECREED that Optional Capital, Inc. was and is the owner of each of the following defendant properties:

\*\*\*

Case number CV-05-3910

(5)   All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in tile name of Alexandria Investment, LLC as of August 8, 2005.

(Exhibit 5: pg. 3, lines 16-18; pg. 4, lines 10-12.)

As noted above, the Final Judgment was entered while the within case was pending in the state Court of Appeal.  Consequently, when jurisdiction was restored in the superior court, and on March 24, 2014, Optional filed its First Amended Complaint (FAC), adding a new paragraph 23 which alleged Optional had obtained the *in rem* Final Judgment decreeing it the owner of the Swiss Funds.  Optional also added a third state law cause of action against DAS based upon Penal Code § 496 for aiding the withholding of, or withholding from Optional, funds DAS knew were stolen.  (Rogari decl., ¶10; Exhibit 1.)

Upon being served with the FAC, DAS did not claim that Optional's reliance upon the Final Judgment constituted a substantial federal question and seek to remove the action.  Rather, on May 12, 2014, DAS filed an answer. Similarly, DAS's Answer did not raise by affirmative defense that the state court lacked jurisdiction over the causes, or that the action was barred by the "Act-of-State" doctrine. (Rogari decl., ¶ 11; Exhibit 6.)

From 2014-2018, Optional's claims against other defendants were litigated to completion, and at a case management conference held April 5, 2018, the superior court set the matter for jury trial against DAS to commence March 4, 2019.  (Rogari decl., ¶12.)    But six months later, DAS began stalling. It made repeated ex parte applications to continue the trial, which were opposed and denied. (Rogari decl., ¶ 13.) On January 28, 2019, DAS tried a different tactic; it had its counsel move to withdraw, knowing that withdrawal on the eve of trial would necessitate a continuance for DAS, a corporate entity.  DAS did not oppose the motion, but Optional did.   DAS then withdrew the motion on the eve of the hearing.  (Rogari decl., ¶ 13.)

Finally, after the trial was briefly continued to March 11, 2019, and the FSC to March 5, 2019, DAS filed its removal petition, obtaining from this Court what it could not get from the trial court - respite from the jury trial.  The

trial court then trailed the FSC to March 18 and the trial to April 15, so that this Court could determine whether subject matter jurisdiction existed in this Court. United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 966 (9th Cir. 2004) (a district court has "a duty to establish subject matter jurisdiction over [a] removed action sua sponte, whether the parties raised the issue or not.") (Rogari decl., ¶¶ 14, 15.)

As discussed below, DAS's removal petition has no merit.  Subject matter jurisdiction does not exist, and the removal petition comes far too late in any event.  The case should be remanded so that the FSC set for March 18, 2019 and the jury trial set for April 15, 2019 can go forward.  Optional should also be awarded its costs and reasonable attorneys fees against DAS and its attorneys, LTL attorneys.

**2.   The Court lacks subject matter jurisdiction over Optional's state law claims.  DAS has not met its burden to establish any of Optional's causes of action are based upon a substantial question of federal law.**

Federal courts are "courts of limited jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  As such, "a federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989)  Thus, removal jurisdiction statutes are strictly construed against removal.  Libhart v. Santa Monica Dairy Co., 92 F.2d 1062, 1064 (9th Cir. 1979). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992).  A district court must remand a removed action "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447[c].  "The burden of establishing federal jurisdiction falls on the party invoking removal." Harris v.

<u>Provident Life and Accident Ins. Co</u>., 26 F.3d 930 (9th Cir. 1994), *overruled on other grounds by* <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 979 (9th Cir. 2012).

DAS has not, and can not, meet its burden to establish federal jurisdiction over any of the three causes of action in Optional's FAC.   Removal is proper only if the claims could have been originally filed in federal court. 28 U.S.C. § 1441.  Removal is governed by the "well-pleaded complaint" rule. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." <u>Id.</u>   Mere reference to federal law is insufficient to permit removal. <u>See Smith v. Industrial Valley Title Ins. Co.</u>, 957 F.2d 90, 93 (3d Cir. 1992)   The three causes pled in Optional's complaint are pure state law claims.  They seek damages for conversion, fraudulent transfer, and violation of California Penal Code § 496.  Federal law does not create any of these causes of action, and it would have been improper for Optional to have brought any one of them in Federal Court.

Nor does the fact that Optional asked the state court to streamline the case by giving Full Faith and Credit to the Final Judgment, or that DAS has asked the state court to give collateral estoppel effect to minute orders in post-Judgment contempt proceedings, vest this Court with subject matter jurisdiction, as DAS claims.

First, Optional can prevail on each of its causes of action even were it not the owner of the Swiss Funds. The fraudulent transfer cause only requires Optional to prove Alexandria transferred the $13 million to DAS to avoid its $33 million dollar debt to Optional.  <u>Optional Capital, Inc. v. DAS Corp.</u>, <u>supra</u>, 222 Cal.App.4th at 1388.  Likewise, on the conversion and Penal Code § 496 causes, DAS is also sued on a conspiracy theory; that it was part of the conspiracy to convert the $33 million stolen from Optional in 2001. (FAC ¶¶

23, 25, 34, 35, 43, 44, 46.)   If Optional proves DAS participated in or joined the conspiracy, it makes no difference whether $15 million of the funds the conspirators stole ended up in Alexandria's Swiss account.   The existence of these alternative theories defeats federal question jurisdiction.   Ultramar America Ltd. v. Dwelle, 900 F.2d 1412, 1414 (9th Cir. 1990).   Additionally, the state Court of Appeal has already held that Optional has pled and can establish a prima facie case against DAS for joining the Kims' conspiracy to convert Optional's money, and engaging in a fraudulent transfer, without benefit of the Final Judgment.   Optional Capital, Inc. v. DAS Corporation., supra, 222 Cal.App.4th at p. 1402.

Further, whether the minute orders in the post-Judgment contempt proceedings provide DAS a defense on grounds they collaterally estop Optional from proving essential elements of its causes of action, as DAS claims, does not convert the state law claims to federal claims.[1] An "affirmative defense based on federal law" does not "render[] an action brought in state court removable." Berg v. Leason, 32 F.3d 422, 426 (9th Cir. 1994).

Thus, in Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 472 (1998), the Supreme Court was called upon to decide whether removal may be predicated on a defendant's assertion that a prior federal judgment had res-judicata effect.   The court answered the question with a resounding no.   "In

---

[1]The defense itself has no merit.   The *sine qua non* for application of res-judicata or collateral estoppel is a final judgment on the merits.   Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1081 (9th Cir. 2003)   The merits of Optional's ownership claim to the Swiss Funds was determined in the 2013 trial based upon the evidence Optional presented showing those  funds were traceable to the funds that were converted from it in 2001.   Neither the legal nor factual basis for Judge Collins' determination  Optional owned the Swiss Funds was or even could be at issue in the contempt proceeding.   Maggio v. Zeitz, 333 U.S. 56, 69 (1948); Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 465  (9th Cir. 1989).

sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review." Id. 522 U.S. at p. 478.  In so concluding, the court also re-affirmed the longstanding rule that  "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." " Id. 522 U.S. at p. 475 *citing* Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 14 (1983).

Nor does the All Writs Act support  removal, as DAS claims.  The Supreme Court long ago determined that the All Writs Act does not confer original jurisdiction required to support removal pursuant to § 1441. Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32-33 (2002).

Ultimately, what DAS ignores is that the only issue cognizable in the *in rem* proceedings was ownership of the defendant properties.  Because i*n rem* forfeiture proceedings are against the defendant properties, such proceedings necessarily do not adjudicate torts or award damages to people who are injured by those torts.  A state law claim can only be re-characterized as a federal claim when the federal law affords a remedy for the wrong the plaintiff asserts he suffered. Hunter v. United Van Lines 746 F.2d 635, 642-643 (9th Cir. 1984). The *in rem* proceeding did not afford Optional a damage remedy against DAS for its torts. Consequently, Eyak Native Village v. Exxon Corp. 25 F.3d 773 (9th Cir. 1994) provides DAS no help.

Since DAS has failed to show removal jurisdiction exists, the case should be remanded so that Optional is not prejudiced any longer by delay in the trial of its claims.

### 3.     The petition is also untimely.

The removal petition is also five years too late.  The 30-day period of timeliness is measured from the point at which the defendant had notice that the case was removable.  28 U.S.C. § 1446 (b) (3).  The complaint was served on DAS in 2011.   After the Final Judgment was entered adjudicating Optional the owner of the Swiss Funds, Optional amended the complaint to allege this fact, attached the Final Judgment as an exhibit, and add the Penal Code violation. The FAC was served on DAS on March 24, 2014.  Thereafter, the FAC has not changed and remains the operative pleading.  Thus DAS has had clear notice since 2014 that Optional intended to rely on the Final Judgment.

Knowing this, DAS resorts to misrepresentation and untenable arguments in an effort to bring itself within the 30-day period by claiming it just learned in pre-trial filings that Optional seeks to collaterally attack the "judgment and orders" in the forfeiture case.   Optional is not, and has never, sought to collaterally attack the May 23, 2013 Final Judgment of the district court in this case.  It would be foolish, if not inane, for Optional to do so.  For, after nine years of litigation in the district court, Optional prevailed on the merits.  The district court's merits determination that Optional is the owner of the Swiss Funds conclusively establishes that fact in this action.  Cal. Code of Civ. Proc. § 1908 (a) [a judgment against a thing rendered in an action before a court of the United States is "conclusive upon the title to the thing"].  Indeed, as an *in rem* adjudication against the Swiss Funds themselves, the Final Judgment determines the interest of all persons in those funds.  Hanson v. Denckla, 357 U.S. 235, 246 fn. 12 (1958).  DAS's assertion that Optional is challenging this favorable determination is even contradicted by the very evidence DAS relies upon.  Optional's opposition brief shows Optional has consistently claimed the

Final Judgment establishes Optional's ownership.[2]   (See DAS removal petition at p. 3:11-15, citing DAS Exhibit BB at p. 10.)

DAS's attempt to bring itself within the 30-day requirement on grounds it just learned Optional purportedly wants to collaterally attack the post-Judgment collateral orders Judge Phillips made in the *in rem* proceeding on December 28, 2018 and January 18, 2019 is also both false and untenable.  It is DAS - not Optional – that seeks to introduce those collateral orders in the state court action as part of DAS's defense, DAS claiming they should be given res judicata (claim preclusion) or collateral estoppel (issue preclusion) effect.  All Optional has done is object to having irrelevant hearsay put before the jury, as DAS's own evidence admits. (See DAS removal petition at p. 3:20-24, citing DAS Exhibit EE at p. 12.)

As previously stated, the defense of res judicata or collateral estoppel do not support removal, even if they applied as DAS claims.  <u>Rivet v. Regions Bank of Louisiana</u>, <u>supra</u>, 32 F.3d at p. 426.

### 4.   The "Act of State" doctrine does not support removal.

Finally, DAS did not raise in its answer any defense based upon the "Act of State" doctrine, yet it argues in its removal petition that this is both an issue in the action and supports removal.   DAS is wrong on both counts.

First, as an affirmative defense, the burden of pleading and proving that

---

[2]At the end of the day, DAS wants the state court to ignore the 5-23-2013 Final Judgment based upon the post-Judgment contempt minute orders.  The fact remains that Optional, and only Optional, prevailed in the trial on the merits.  Not the Government, not DAS, not the Kims, and not Alexandria.   Consequently, res judicata now precludes all of them, and particularly DAS, from challenging the adjudication in favor of Optional on any other theory, including collateral estoppel.  <u>Kamilche Co. vs. U.S.</u>, 53 F.3d 1059, 1063 (9th Cir. 1995) (government prohibited from arguing adverse possession or any other legal theory inconsistent with the *Simpson 1* court's ruling Simpson owns the disputed property).

conduct of a foreign government amounts to an Act of State rests with DAS, the party asserting the defense.  See <u>Alfred Dunhill of London, Inc. v. Republic of Cuba</u>, 425 U.S. 682, 691 (1976).   DAS never pleaded this defense when it originally demurred to the complaint in 2011, or when it answered the FAC in 2014.  To this date, DAS has not sought to amend its answer to allege the defense.   Therefore, the act of State doctrine is not an issue in this case.

Moreover, if DAS were to seek leave to amend its Answer, and leave is granted, removal still would not lie.   "[A] case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  <u>Rivet v. Regions Bank of Louisiana, supra</u>, 522 U.S. at 475.

Indeed, while DAS argues the merits of a defense it has not even pled, its arguments about that defense are both conclusory and meritless. The doctrine only applies if the relief sought by the plaintiff <u>requires</u> a court to invalidate an official act of a foreign sovereign.  <u>W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp. Int'l</u>, 493 U.S. 400, 405-406 (1990).   That an act of a foreign sovereign lurks in the background does not invoke the doctrine.  <u>Timberlane Lumber Co. v. Bank of America,</u> 549 F.2d 597, 608 (9th Cir. 1976) (doctrine inapplicable where defendants obtained a government order as part of their conspiracy to disrupt plaintiff's business).

Even were DAS permitted to amend its answer at this late date, it could not establish that for Optional to obtain damages against it for a theft that occurred in South Korea in 2001, the act of a Swiss prosecutor in lifting a freeze on funds in a bank account in Switzerland 10 years later, would have to be invalidated.   Also, if what DAS asserts in its papers about the conduct of the prosecutor is even relevant and admissible, a jury could reject DAS's arguments and conclude the Kims, Alexandria and DAS simply obtained a prosecutor's

order as part of their conspiracy.

Finally, the doctrine is not found in the Constitution or any federal statute. Instead, it is a legal principal that, where it applies, applies to all courts - both state and federal. The state court is not only capable of determining whether the doctrine applies here, Optional submits the state court is in better position to decide it, since it is state law that dictates what Optional must establish to prove its claim.

In short, DAS has not established that jurisdiction exists. At best, DAS has shown that if granted leave it might be able to raise a defense based upon the Act of State doctrine. But defenses based upon federal law do not support removal. Optional's motion to remand should be granted.

### 5.    Conclusion

DAS has failed to show removal jurisdiction exists, while the circumstances show the removal petition was filed purely for purposes of delay. The case should be remanded so that Optional is not prejudiced any longer by delay in the trial of its claims. Optional requests that DAS and its attorneys LTL Attorneys be ordered to pay Optional's actual costs and reasonable attorneys under 28 U.S.C. § 1447[c].

                                    Respectfully submitted,

Date: March 11, 2019            ROGARI LAW FIRM, PC


                                _/s/_____
                                By: Ralph Rogari
                                Attorney for Optional Capital, Inc.

# DECLARATION OF RALPH ROGARI

I, Ralph Rogari, declare:

1.     I am an attorney licensed to practice before all courts of the state of California, the Ninth Circuit Court of Appeals, and the U.S. District Court for the Central District of California.   The following facts are of my personal knowledge and if called upon to testify, could do so as to the following facts.

2.     Along with Mary Lee, I have represented Optional Capital, Inc. continuously in this case since it was filed in 2011.  Mary Lee and I have also continuously represented Optional Capital, Inc. in the consolidated *in rem* forfeiture proceedings in the U.S. District Court, Central District of California, cases CV04-2788, CV04-3386, and CV05-3910 since 2004, in both the district court and before the Ninth Circuit.  As such I am personally familiar with the pleadings and documents on file in those actions.

3.     The within lawsuit was filed on December 1, 2011.  The operative complaint is the First Amended Complaint, and it alleges three causes of action.  A copy of the FAC is attached as Exhibit 1.

4.     When this action was filed, the three related *in rem* proceedings identified above were ongoing in the district court.  They had been filed by the U.S. Government in 2004 and 2005, and sought civil forfeiture of properties acquired by the Kims and others with Optional's funds.  Case CV05-3910 specifically sought forfeiture of the Swiss Funds, among other properties.  Optional and DAS, as well as Alexandria and the Kims, filed ownership claims to the Swiss Funds.  As it does in this action, Optional alleged it owned the Swiss Funds because they were traceable to the funds the Kims had stolen from it back in 2001.

5.     The Government eventually lost its forfeiture case on summary judgment.   The district court had ruled this meant Optional and DAS also lost their ownership claims, but by decision filed December 15, 2010, the Ninth

Circuit reversed, holding the district court had continuing *in rem* jurisdiction over the Swiss Funds and other defendant properties, and ordering the district court to determine who, as between Optional, DAS, the Kims and Alexandria, was their true owner.  U.S. vs. DAS Corporation, 406 Fed.Appx. 154, 2010 WL 5189226 (2010).  A copy of the decision is attached as Exhibit 2.

6.    By decision filed January 4, 2011, the Ninth Circuit also reinstated a $33.7 million conversion verdict Optional had obtained against members of the Kim family and Alexandria based on the theft of the $33.7 million and deposit of some of those funds into the Swiss account.  Optional Capital, Inc. v. KJ Kim et al. 414 Fed.Appx. 12, 2011 WL 17578 (2011)  A copy of the decision is attached as Exhibit 3.

7.    On the heels of that decision, and on February 1, 2011, the transfer from Alexandria to DAS took place.   It took place without prior knowledge or consent of Optional or the district court.   When Optional learned what had transpired and DAS's counsel was required to disclose what had occurred, DAS acknowledged the transfer of possession to DAS did not deprive the district court of jurisdiction to determine ownership of the Swiss Funds:

> This court never has had control over the Swiss Accounts. Consequently, its jurisdiction and ability to determine ownership of the funds in the Swiss Accounts was not and could not be affected by the transfer of funds in the Swiss Accounts to DAS.

(DAS Oppn. to contempt Dkt 754, filed 5/23/11  pg. 21 of 32, lines 2-5.)

> There is no merit to Optional's claim that ordering the foreign funds into the United States is "necessary" for this Court to be able to decide the competing claims to the Swiss Accounts, or that Credit Suisse's transfer of funds from the Swiss Accounts somehow divested this Court of in rem jurisdiction.   According to the Ninth Circuit, the Court retains in rem jurisdiction without any control over the funds.. . . .  Therefore, the transfer neither undermined this Court's in rem jurisdiction, nor otherwise impacted the ability of this Court to exercise that jurisdiction and decide the claims before it.

(DAS Oppn. to contempt Dkt 754, filed 5/23/11  pg.  pg. 22 of 32, lines 1-10.]

8.    Beginning April 30, 2013,  the district court conducted a bench trial

on the merits of Optional's, the Kims and Alexandria's competing ownership claims to the Swiss Funds and other properties that were the subject of the *in rem* proceeding.  Optional prevailed.  A copy of the district court's Findings of Fact and Conclusions of Law entered on May 17, 2013 is attached as Exhibit 4.

9.    The district court's Final Judgment was entered on May 23, 2013. A copy of the court's Final Judgment is attached as Exhibit 5.

10.    The Final Judgment was entered while the state appeal in this action was pending. Consequently, when jurisdiction was restored to the state trial court, and on March 24, 2014, Optional filed its First Amended Complaint (FAC), adding the allegation that Optional had obtained Judgment in its favor, decreeing Optional the owner of the Swiss Funds, and attaching a copy of the Final Judgment to the FAC.  (Exhibit 1.)

11.    Upon being served with the FAC, DAS did not remove the case to this Court.   Rather, on May 12, 2014, DAS filed its answer.  A true copy of the Answer is attached as Exhibit 6.   DAS's Answer did not raise as an affirmative defense that the state court lacked jurisdiction over the causes or that the claims are barred under the Act-of-State doctrine, nor has DAS ever sought to amend its Answer to raise those defenses.

12.    From 2014-2018, Optional's claims against other defendants were extensively litigated.  At a status conference held on April 5, 2018, the matter was set for a jury trial against DAS to begin March 4, 2019.

13.    DAS then began stalling.  Three times, DAS applied ex parte to have the trial continued.  Optional opposed all three ex partes, and the trial court denied them, the last denial occurring on January 18, 2019.  On January 28, 2019, DAS's counsel then sought delay by filing a motion to withdraw. DAS filed no opposition, but Optional did.   DAS's counsel then withdrew the motion two days before the hearing.

14.     On February 22, 2019, the trial was briefly continued to March 11, 2019, and the FSC set for March 5, 2019.   Without notice to Optional or the court, DAS filed its removal petition on March 4, 2019.

15.     At the FSC of March 5, 2019 the trial court continued the FSC to March 18 and the trial to April 15, so that this Court could determine whether subject matter jurisdiction existed in this Court.

16.     By e-mail on March 5, 2019, I advised DAS's attorneys that Optional intended to file this ex-parte application unless DAS was willing to withdraw the subject removal petition.  DAS's counsel advised me by e-mail on March 6, 2019 that DAS was unwilling to do so, thus necessitating this application.  Copies  of the emails are attached as Exhibit 7.

I declare under penalty of perjury the foregoing is true and correct. Executed on March 11, 2019 at Los Angeles, California.

/S/
RALPH ROGARI